**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| SHELLIE A. FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:09-cv-0105-SEB-DML |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Shellie A. Fox ("Fox") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I.  Background**

Fox applied for DIB on June 8, 2005, alleging an onset date of March 29, 2004. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on May 1, 2008. Fox was present without counsel. Medical and other records were introduced into evidence. Fox, a medical expert and a vocational expert testified. The ALJ denied Fox's application on August 19, 2008. On January 9, 2009, the Appeals Council denied Fox's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Fox met the insured status requirements of the Act through March 31, 2010; (2) Fox had not engaged in substantial gainful activity since March 29, 2004, the alleged onset date; (3) Fox had the following "severe" (more than minimal) impairments: degenerative disc disease and fibromyalgia; (4) Fox did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Fox had the residual functional capacity ("RFC") to perform medium exertional work as defined in 20 C.F.R. 404.1567(c) except as follows: she could occasionally lift and/or carry 50 pounds and could frequently lift and/or carry 25 pounds; she could stand and/or walk for a total of about six hours in an eight hour workday; she could sit for a total of about six hours in an eight hour workday; pushing and/or pulling were limited to the same extent as indicated for lifting and/or carrying; she had mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace; (6) Fox was capable of performing past relevant work as a solderer, assembler, teacher aide and van driver, as this work did not require the performance of work-related activities precluded by Fox's RFC; (7) in the alternative, Fox was born on July 23, 1963 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date, and was age 45 at the time of the ALJ's decision and was a younger individual age 45-49; (8) Fox had a high school education, was able to communicate in English and had no acquired work skills from past relevant work; and (9) considering Fox's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Fox had not been under a "disability" as defined in the Act at any time from March 29, 2004, through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Fox had severe impairments consisting of degenerative disc disease and fibromyalgia. At step four of the analysis, the ALJ concluded that Fox could perform her past relevant work as a solderer, assembler, teacher aide and van driver and that, in the alternative, at step five, Fox had the RFC to perform a significant number of other medium exertional jobs in the national economy. Fox contends that the ALJ's decision is not supported by substantial evidence.

Fox first argues that the ALJ failed to properly evaluate the July 2005 report of consulting examining psychologist Dr. Rasmussen. Dr. Rasmussen examined and tested Fox and opined that Fox's mental RFC was "moderately impaired," that her concentration was "overall poor" and her attention span was "poor and labored." (R. at 239). Fox does not assert that the ALJ ignored Dr. Rasmussen's opinion. She contends that the ALJ "merely summarized" that opinion and did not adequately evaluate and explain his rationale for rejecting it. In a related argument, Fox contends that the ALJ's determination that her mental impairment was not "severe" is not supported by substantial evidence.[1]

In the course of reviewing the evidence of record relating to Fox's mental impairment, the ALJ noted that Dr. Rasmussen, clinical psychologist, performed a consultative examination of Fox on July 7, 2005. The ALJ's discussion of that report is as follows:

> The claimant reported being depressed and anxious. She presented as angry, sad, and tearful. Her mood seemed fragile and her thoughts were concrete, egocentric, and slightly disjointed and tangential. The claimant's abstract thinking was fair to poor. She seemed confused at times. The claimant's attention span and concentration were moderately to severely impaired and labored. There were no abnormalities of speech and the claimant appeared to be of average intelligence. Dr. Rasmussen diagnosed major depression, recurrent, moderate,

---

[1] To be considered "severe," an impairment must significantly limit a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

3

> and anxiety disorder, not otherwise specified. He characterized her remaining functional mental capacity as moderately impaired.

(R. at 19).

The ALJ further noted that the State Agency consultants determined in August and November 2005 that Fox did not have a "severe" mental impairment, that she had no restriction of activities of daily living, she had mild difficulties in maintaining social functioning, and she had mild difficulties in maintaining concentration, persistence, or pace. (R. at 19). The ALJ stated that Fox was prescribed Elavil and Cymbalta for depression, but progress notes indicated that she never received the Elavil. *Id.* Fox was believed to be bipolar and was prescribed Risperdal. *Id.* The medication was later changed to Abilify, and Fox was prescribed other psychotropic medications, including Klonopin, Wellbutrin, and others, with little positive response. *Id.*

The ALJ also mentioned a progress note of August 7, 2006, which he construed as indicating that Fox was not really depressed and was not suffering from significant mood swings. (R. at 20, citing R. at 357). The ALJ also noted that in June 2006, Fox acknowledged discontinuing medication for bipolar disorder on her own, and that later progress notes showed additional complaints of depression. *Id.*

The ALJ concluded that "[b]ased on all the evidence of record, the undersigned agrees with the state assessment at Exhibit 1F/81-91." (R. at 20, citing R. at 223-33). The ALJ determined that Fox had no restriction of activities of daily living, she had mild difficulties in maintaining social functioning, and she had mild difficulties in maintaining concentration, persistence, or pace. *Id.* The ALJ stated that the medical progress notes did not show significant limitations arising from any mental impairment. *Id.* The ALJ further stated that Fox's compliance had been "at best spotty, indicating that she did not really feel any need for the medication prescribed." *Id.*

The court agrees with Fox that the ALJ's analysis of her mental impairment was deficient. The ALJ recited some of the evidence of Fox's mental limitations and then simply stated that he "agrees" with the State Agency assessment. (R. at 19-20). This summary conclusion lacks sufficient evaluation of the evidence and does not afford meaningful review. The court cannot ascertain on what basis the ALJ agreed with the State Agency non-examining reviewers who opined that Fox was limited to mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace (R. at 233), in the face of the report of Dr. Rasmussen and his objective findings indicating that Fox's memory was "fair to poor," her concentration was "not reliable and is overall poor" and her attention span was "poor and labored." (R. at 239). Each of these limitations-poor memory, concentration and attention span-would correspond directly with having difficulty performing work activities. The ALJ did not mention the fact that Dr. Rasmussen assigned a Global Assessment of Functioning ("GAF") score of 45, which indicates serious symptoms. (R. at 239).[2] Moreover, Dr. Rasmussen's findings were not the only evidence

---

[2] A GAF score of 45 equates with "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." *See* American Psychiatric Association, Diagnostic

4

that would support a finding that Fox suffered mental impairments which significantly limited her ability to do basic work activities. Treatment notes indicated that Fox had mood swings and symptoms of depression which her physicians treated with various medications. The ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion." *Giles ex rel Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (internal quotation omitted). The court requires "an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies." *Id.* at 488. Such an explanation is lacking in this case.

On May 8, 2006, Fox's family physician informed her that her "positive mood disorder questionnaire is 93% accurate" and that the physician believed that her symptoms were consistent with that. (R. at 359). The August 7, 2006, treatment note referenced by the ALJ reflected that Fox reported to her physician that she wanted to go off the Lamictal because she could not function. (R. at 357). The medication made her very drowsy and moody. *Id.* The note also indicated that Fox had a positive MDQ ("mood disorder questionnaire") (used to screen for Bipolar Spectrum Disorder. About.com: Bipolar Disorder, Nov. 19, 2009) (R. at 357). Ten days later, the physician noted that Fox was "still depressed" and "not doing real great." (R. at 356). The physician decided to add some Lexapro. *Id.* On August 28, 2006, Fox reported "getting depressed again." (R. at 355). That note reported that they had "stopped the Lamictal not for a lack of efficacy but because of side effects." *Id.* The ALJ relied on a single phrase from the August 7, 2006, note that appears to reflect Fox's statement that "[s]he isn't really depressed" (R. at 357) without acknowledging that the overall complaint at that time was that she was suffering too many side effects from the Lamictal medication. Indeed, the ALJ failed to mention the next note a mere ten days later which stated that Fox was "still depressed" and "not doing real great." (R. at 356).

The ALJ's assumption that Fox was not compliant and therefore "did not really feel any need for the medication prescribed," (R. at 20), is not supported by any testimony or medical source. The ALJ should have considered whether not taking medications as prescribed was a symptom of or consistent with Fox's mental impairment itself, whether the side effects were too severe (as indicated in the progress notes), or whether there were other explanations for any irregularity in taking prescription medications. *See* SSR 96-7p ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment").

Treating physician Dr. Feng also completed several mental RFC forms, indicating that Fox was moderately limited in her ability to maintain attention and concentration for extended periods, and in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (R. at 299, 313, 335). The ALJ rejected them on the basis that the evaluations contained no objective medical evidence supporting them. (R. at 22). The ALJ further explained that medical expert Dr. Lorber testified that Dr. Feng's restrictions were not justified by medical evidence. *Id.* Dr. Lorber,

---

and Statistical Manual of Mental Disorders 32 (4th ed., Text Rev. 2000).

an orthopedic surgeon, however, did not in fact testify about the mental RFC evaluations completed by Dr. Feng. (R. at 448-51). As far as mental limitations are concerned, Dr. Lorber merely testified that Fox had been diagnosed as being bipolar and that he did not "recall seeing any significant psychological [sic] or any treatment." (R. at 451).

For the above stated reasons, the ALJ's conclusion that Fox did not have a severe mental impairment was not supported by substantial evidence. On remand, the ALJ shall reconsider the mental health evidence and any additional evidence presented and shall articulate his reasoning for the weight he assigns to such evidence. The ALJ shall also incorporate his findings as to Fox's mental health limitations into the hypothetical question posed to the vocational expert.

Fox's other claim is that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Fox asserts that the ALJ did not cite a single activity in support of his conclusion that Fox was not credible given her "described activities." (R. at 21). Fox further contends that the ALJ violated the holding in *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996), and also erroneously evaluated her use of strong pain medications and the side effects from such medication.

The ALJ stated that "[t]he fact that the claimant does not have objective medical findings consistent with severe pain and that she has received only conservative treatment, the absence of any credible opinion by a treating or examining physician fully supporting her alleged limitations, her noncompliance with treatment, the skeptical remarks by treating physicians, and her described activities convince the undersigned that she does not experience subjective symptoms which credibly prevent her from doing the work consistent with the residual functional capacity." (R. at 21). In the paragraph above this statement, the ALJ recited as follows:

> The claimant testified to poor memory, headaches, back pain, and neck pain. Her pain is worsened by activity. It is relieved by medication and heat. She is depressed and cannot work due to pain. She denied any psychiatric treatment. The claimant stated that she can walk 15 minutes, stand five minutes, sit 30 minutes, and lift nothing. She does some housework, including cooking, with the help of her sister. She shops, goes to church, and visits family. She was able to drive to the hearing.

*Id.*

Contrary to Fox's suggestion, the ALJ *did* describe Fox's activities. How such minimal activities support a finding of "not credible," however, is not explained. The ALJ recited that Fox did some housework, including cooking, with the help of her sister, she shopped, went to church, and visited family. *Id.* None of the activities cited by the ALJ or reported by Fox required sustained concentration, activity, strength, or mobility. Reliance on a claimant's minimal daily activities does not form an adequate basis to discredit her allegations of disability. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"). The ALJ did not explain his basis for concluding that the minimal activities

6

described above were sufficient to support a finding that Fox could perform medium level work on a regular and continuing basis, meaning eight hours a day, five days a week.

The ALJ stated that Fox "does not have objective medical findings consistent with severe pain," (R. at 21), but failed to acknowledge the fact that the symptoms of fibromyalgia are "entirely subjective." *Sarchet*, at 306 ("There are no laboratory tests for the presence of severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch."). The ALJ did not separate any consideration of pain caused by fibromyalgia, for which there would be no objective findings, from any other physical impairment that might cause pain.

The ALJ mentioned the fact that Fox took strong pain medication, but this fact was not used to bolster Fox's credibility. (R. at 21). Rather, the ALJ merely noted that medical expert Dr. Lorber testified that Fox "was taking an excessive amount of prescription narcotic pain medication." *Id.* The ALJ did not explain how taking strong *prescription* pain medications might reduce a claimant's credibility. Fox correctly points out that the ALJ failed to acknowledge her consistent reports that her pain and bipolar medications caused side effects, including drowsiness. (R. at 73, 81, 106, 135).

In addition, as discussed above, the ALJ's conclusion with respect to Fox's "noncompliance" with treatment is not supported by substantial evidence. Before he drew negative inferences, the ALJ failed to consider possible explanations for the lack of psychiatric treatment or any alleged noncompliance with treatment. *See* SSR 96-7p.

"[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(2)-(4) (quotation omitted)). "An ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Id.* (quotation omitted). The ALJ "must justify the credibility finding with specific reasons supported by the record." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (remanding ALJ's decision where credibility assessment was not supported by the record).

Although the court grants special deference to the credibility determination made by the ALJ and generally will not overturn it unless it is "patently wrong," in this case the ALJ did not "build an accurate and logical bridge" from the evidence to his conclusions. *See Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (ALJ's decision remanded because ALJ's reasons for his adverse credibility finding were flawed); *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001). In addition to the points discussed above, because on remand the ALJ will reconsider the mental health evidence and restrictions in the areas of depression, concentration, memory, and attention span, that process is likely to also effect the ALJ's view of Fox's overall credibility. Under these circumstances, the court cannot affirm the ALJ's credibility analysis. On remand, the Commissioner must reassess Fox's credibility in light of all of the evidence of record and the matters discussed above.

### III.  Conclusion

For the reasons discussed in this Entry, the ALJ's conclusions are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

On remand, the ALJ shall reconsider the mental health evidence, including the report of Dr. Rasmussen and any additional evidence presented, and shall articulate his reasoning for the weight he assigns to such evidence. The ALJ shall also incorporate any mental health limitations into the hypothetical question posed to the vocational expert. In addition, the ALJ shall reassess Fox's credibility as discussed in this Entry.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date: 03/30/2010

*[Signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana